## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **ELROY BROW,** | ) | |
| | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2016-0026** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| ————————————————— | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal Action No. 1990-0048** |
| | ) | |
| **ELROY BROW, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ————————————————— | ) | |

**Attorneys:**
**Matthew A. Campbell, Esq.,**
St. Thomas, U.S.V.I.
        *For Petitioner/Defendant Elroy Brow*

**Adam Francis Sleeper, Esq.,**
St. Thomas, U.S.V.I.
        *For the United States*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on two Reports and Recommendations ("R&Rs") issued by Magistrate Judge George W. Cannon, Jr. (Dkt. Nos. 110, 128). In his first Report and Recommendation ("First R&R") (Dkt. No. 110), the Magistrate Judge recommends that Petitioner Elroy Brow's ("Petitioner" or "Brow") "Motion for a Reduction of Sentence or Immediate Release Purs[u]ant to 28 USC 2255" (Dkt. No. 85) and his Supplement thereto (Dkt No. 99) (collectively

"Section 2255 Petition")[1] be granted. In his second Report and Recommendation ("Second R&R") (Dkt. No. 128), the Magistrate Judge recommends that Petitioner's "Motion for Sentence Reduction under the First Step Act" ("First Step Act Motion") (Dkt. No. 121)[2] be granted in part and denied in part. Having considered the Government's Objections and the entire matter, the Court will reject the First R&R and deny Petitioner's Section 2255 Petition. Additionally, the Court will reject the Second R&R and deny Petitioner's First Step Act Motion.[3]

## I.      BACKGROUND

Petitioner was convicted by a jury on June 28, 1990 of three counts: two for possession of cocaine and marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and one for conspiracy to do the same in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Dkt. Nos. 32, 36). According to the Presentence Report, Brow was found responsible for 492 grams of cocaine base (crack cocaine) and 67 grams of marijuana leading to a base offense level of 34. He was also found to be a career offender putting him in the criminal history category of VI and increasing his offense level to 37. He was sentenced to a term of 360 months (30 years) of imprisonment and 5 years of supervised release. (Dkt. No. 36). On May 5, 1992, the Third Circuit affirmed Petitioner's conviction. (Dkt. Nos. 73, 74). *See also United States v. Brow*, 968 F.2d 14 (3d Cir. 1992). The

---

[1] Petitioner's "Motion for a Reduction of Sentence or Immediate Release Purs[u]ant to 28 USC 2255" (Dkt. No. 85) and his Supplement thereto (Dkt. No. 99) were referred to Magistrate Judge Cannon pursuant to the Court's March 22, 2018 Order. (Dkt. No. 108).

[2] Petitioner's "Motion for Sentence Reduction under the First Step Act" (Dkt. No. 121) was referred to Magistrate Judge Cannon pursuant to the Court's September 18, 2019 Order. (Dkt. No. 125).

[3] A civil case, Civil Action No. 2016-0026, was opened in response to Brow's 2255 Petition. All references to docket entries herein refer to Brow's criminal case, Criminal Action No. 1990-0048.

Bureau of Prisons website indicates that Brow is set to be released on August 2, 2025.[4]

On May 20, 2016, Petitioner, who was then *pro se*, filed his "Motion for a Reduction of Sentence or Immediate Release Purs[u]ant to 28 USC 2255" (Dkt. No. 85), wherein Petitioner requests a reduction of sentence or immediate release in light of *Johnson v. United States*, 576 U.S. 591 (2015). On July 1, 2016, the Office of the Federal Public Defender ("FPD") moved to represent Petitioner. (Dkt. No. 86). In support of the motion, the FPD argued that Brow may be eligible for relief from his sentence because he received a sentencing enhancement under United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 4B1.2 for having prior convictions for a "crime of violence" as defined using "identical language that was contained in the now invalid 'residual clause' of the [Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii)] that was struck down in <u>Johnson</u>." (Dkt. No. 86 at 2). On July 6, 2016, Magistrate Judge Cannon appointed the Office of the Federal Public Defender as counsel for Petitioner. (Dkt. No. 87).

On December 5, 2017, the Third Circuit granted Petitioner leave to file a second or successive § 2255 petition based on the *Johnson* challenge to his sentencing enhancement. (Dkt. No. 98).[5] That same day, Petitioner filed his "Supplement to Motion to Vacate and Correct Sentence Under 28 U.S.C. § 2255." (Dkt. No. 99). The Government filed an Opposition to Petitioner's Section 2255 Petition (Dkt. No. 107) and Petitioner filed a Reply (Dkt. No. 109).

In his First R&R, Magistrate Judge Cannon recommends that the Court grant Petitioner's Section 2255 Petition. (Dkt. No. 110 at 17). The Government objected (Dkt. No. 112), and Petitioner submitted his response to the Government's Objection (Dkt. No. 115).

---

[4] *See Find an inmate*, Federal Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/byname.jsp (last visited June 14, 2022).

[5] Petitioner had previously filed a § 2255 petition in 1996. (Dkt. No. 107 at 2).

On July 16, 2019, Petitioner filed his First Step Act Motion (Dkt. No. 121) requesting resentencing under the First Step Act of 2018. The Government filed its Opposition to Petitioner's First Step Act Motion (Dkt. No. 124), and Petitioner filed a Reply (Dkt. No. 127).

On October 3, 2019, Magistrate Judge Cannon issued his Second R&R recommending that the Court grant in part and deny in part Petitioner's First Step Act Motion. (Dkt. No. 128 at 18). Magistrate Judge Cannon concluded that Brow is eligible for a sentence reduction under the First Step Act and recommends that the Court consider the facts set forth in 18 U.S.C. § 3553(a) in resentencing. *Id.* at 16-17. However, Magistrate Judge Cannon recommends that the Court deny Petitioner's request for a full resentencing hearing. *Id.* at 16.

The Government filed an Objection to the Second R&R. (Dkt. No. 130). The Government later filed a "Notice of Supplemental Authority and Withdrawal of its Objections, Docketed at ECF No. 128, to the Report and Recommendation" (Dkt. No. 138), within which the Government states that it "(1) withdraws its objections arguing that the defendant was *ineligible* for a sentencing reduction; and (2) as such, no longer objects to the non-plenary resentencing recommended by the Magistrate Judge, but notes that (i) the non-plenary resentencing need not necessarily result in any reduction (or any significant reduction) of the defendant's term of imprisonment, and (ii) at the resentencing, the Court must consider all of the Section 3553(a) factors." (Dkt. No. 138 at 6).

## II.    DISCUSSION

Parties may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). When a party makes a timely

objection, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In view of the Government's timely Objections to the Magistrate Judge's R&Rs, the Court will review both R&Rs *de novo*.

### A.      First Report and Recommendation

In his Section 2255 Petition, Brow argues that when he was sentenced in 1990, he received a sentencing enhancement as a "career offender" because he had three prior felony convictions that qualified as "crimes of violence" under U.S.S.G. §§ 4B1.1 and 4B1.2. (Dkt. No. 99 at 2). These "crimes of violence" were two convictions for assault in the third degree in 1982 and 1985 and a conviction for robbery in the third degree in 1983. *Id.* at 2-3.

The Guidelines in place at the time of Petitioner's sentencing on August 21, 1990[6] provided that:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1 (1989). The 1989 Guidelines further stated:

> (1) The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that –
>
> > (i)      has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> > (ii)     is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

---

[6] U.S.S.G. Manual (effective November 1, 1989).

U.S.S.G. § 4B1.2(1) (1989). These categories for defining a crime of violence are referred to as the "force clause,"[7] the "enumerated clause,"[8] and the "residual clause."[9] (Dkt. No. 99 at 2 & n.2).

The Supreme Court in *Johnson v. United States*, 576 U.S. 591 (2015), analyzed the "residual clause" in the Armed Career Criminal Act ("ACCA"). The ACCA provided a sentencing enhancement for a felon in possession of a firearm if (s)he had three or more convictions for a "violent felony." *Id.* at 593. Similar to U.S.S.G. § 4B1.2(1)(ii), the definition of "violent felony" included a residual clause, which meant that a violent felony included "any crime punishable by imprisonment for a term exceeding one year . . . that— . . . (ii) . . . *otherwise involves conduct that presents a serious potential risk of physical injury to another*." *Id.* at 594 (quoting 18 U.S.C. § 924(e)(2)(B)). The Supreme Court found that the "residual clause" of the ACCA was unconstitutionally vague. *Id.* at 597.

Petitioner argues that given the Supreme Court's ruling in *Johnson*, his current sentence would be invalid if the Court's determination that his prior convictions were crimes of violence was based on the residual clause, and his prior convictions otherwise fail to qualify as "crimes of violence" under the remaining force and enumerated clauses. (Dkt. No. 99 at 3-4). Petitioner requests that the Court grant his Section 2255 Petition, vacate his current sentence, and resentence him without the career offender enhancement. *Id.* at 4. The Magistrate Judge recommends that Brow's Section 2255 Petition be granted. (Dkt. No. 110 at 17).

---

[7] The "force clause" is the portion of the 1989 Guidelines that reads: "has as an element the use, attempted use, or threatened use of physical force against the person of another."

[8] The "enumerated clause" is the portion of the 1989 Guidelines that reads: "is burglary of a dwelling, arson, or extortion, involves use of explosives."

[9] The "residual clause" is the portion of the 1989 Guidelines that reads: "otherwise involves conduct that presents a serious potential risk of physical injury to another."

The Government objects to Magistrate Judge Cannon's First R&R on the ground that Brow's Section 2255 Petition is procedurally barred as untimely. (Dkt. No. 112 at 3-8). Petitioner claims that his "petition is timely under 28 U.S.C. § 2255(f)(3) because he filed it within one year of the Supreme Court's decision in Johnson – a ruling which established a 'newly recognized' right that is 'retroactively applicable to cases on collateral review.'" (Dkt. No. 99 at 4 (citing *Welch v. United States*, 136 S. Ct. 1257 (2016))).

There is a one-year period of limitation within which to bring a motion under 28 U.S.C. § 2255. 28 U.S.C. § 2255(f). Defendants may bring a motion within one year of when their conviction becomes final. 28 U.S.C. § 2255(f)(1). After this period has expired, there are limited circumstances in which a defendant may bring a petition under 28 U.S.C. § 2255. Under subsection (f)(3), the one-year period of limitation starts to run again from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).[10] Further, the statute provides that a second or successive motion—as is the case with the motion here—must be certified by the court of appeals "to contain . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).[11]

The Supreme Court in *Welch v. United States*, 578 U.S. 120 (2016), held that "*Johnson* announced a substantive rule that has retroactive effect in cases on collateral review." *Id.* at 135. *Johnson* was decided on June 26, 2015 and Brow's Section 2255 Petition based on the rule

---

[10] Petitioner does not assert that any other subsection under 28 U.S.C. § 2255(f) would make his petition timely.

[11] "The limitation period in [28 U.S.C. § 2255(f)(3)] applies to 'all motions' under § 2255, initial motions as well as second or successive ones." *Dodd v. United States*, 545 U.S. 353, 359 (2005).

announced in *Johnson* was filed on May 20, 2016. (Dkt. No. 85).[12] Despite Brow filing his petition within one year of *Johnson*, the Government argues that his petition is still barred because the Supreme Court has not declared any new rule *applicable to Brow's case* as *Johnson* announced a new constitutional rule regarding sentencing under the ACCA, not the career offender provision of the Guidelines. (Dkt. Nos. 107 at 5-6; 112 at 8).

Subsequent to its decision in *Johnson*, the Supreme Court, in *Beckles v. United States*, 137 S. Ct. 886 (2017), declined to extend the rule in *Johnson* to the residual clause of the career offender enhancement in U.S.S.G. § 4B1.2 under the *advisory* Guidelines. The Supreme Court found that the advisory Guidelines "are not subject to a vagueness challenge under the Due Process Clause" because "[u]nlike the ACCA . . . the advisory Guidelines do not fix the permissible range of sentences . . . , they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Beckles*, 137 S. Ct. at 892. However, Brow was sentenced when the Guidelines were *mandatory*.[13] (Dkt. Nos. 107 at 6; 109 at 1). *Beckles* left open the question as to whether *Johnson* applied to the mandatory application of the Guidelines. 137 S. Ct. at 903 n.4 (Sotomayor, J., concurring) ("The Court[] . . . leaves open the question whether defendants sentenced to terms of imprisonment before our decision in *United States v. Booker* . . . may mount vagueness attacks on their sentences."). Because the Supreme Court has not affirmatively answered this question, the Government argues "[i]t is thus emphatically clear that there is no new rule of constitutional law, declared retroactive by the Supreme Court" extending

---

[12] Under 28 U.S.C. § 2255(f), the one-year limitations period "restarts on the date of the Supreme Court decision initially recognizing the right, and not the date of the decision that thereafter makes the right retroactively applicable to cases on collateral review." *United States v. Green*, 898 F.3d 315, 318 (3d Cir. 2018) (citing *Dodd*, 545 U.S. at 357).

[13] The Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), found the mandatory application of the Guidelines unconstitutional and rendered the Guidelines advisory.

*Johnson* to the mandatory application of the Guidelines and therefore, nothing to permit Brow's Section 2255 Petition under 28 U.S.C. § 2255(f)(3). (Dkt. Nos. 107 at 6; 112 at 4-5).

Magistrate Judge Cannon did not address whether Brow's Section 2255 Petition was procedurally barred. Subsequent to Magistrate Judge Cannon's opinion, the Government filed a Notice of Supplemental Authority (Dkt. No. 117), attaching the Third Circuit case *United States v. Green*, 898 F.3d 315 (3d Cir. 2018). The Third Circuit answers in the negative whether *Johnson* announced a new rule applicable to challenges to the mandatory application of the career offender enhancement of the Guidelines for purposes of the limitations period prescribed by 28 U.S.C. § 2255(f)(3).

In *Green*, the petitioner—who like Brow was determined to be a career offender under the then-mandatory Guidelines—challenged his sentence within one year of *Johnson*. 898 F.3d at 316. The Third Circuit stated that "Johnson did not recognize a right to bring a vagueness challenge to the mandatory Sentencing Guidelines. As the Court in Beckles clarified, that remains an open question." *Id.* at 321. The Third Circuit went on to hold that "[petitioner's] motion is untimely in light of the plain language of 28 U.S.C. § 2255(f)(3) and the Supreme Court's indication in Beckles that it remains an open question whether the mandatory Sentencing Guidelines can be subject to vagueness challenges." *Id.* at 322-23.

Given the Third Circuit's holding in *Green*, the Court finds that Brow's Section 2255 Petition is procedurally barred because Petitioner has not asserted a right newly recognized by the Supreme Court that applies to his case from which the one-year limitations period under 28 U.S.C. § 2255(f) would start to run.[14] Thus, the Court will reject Magistrate Judge Cannon's First R&R

---

[14] While the Third Circuit has certified that Petitioner may bring his second or successive petition (Dkt. No. 98), in its "gatekeeping role," the Third Circuit "assess[es] whether the petitioner has satisfied the pre-filing requirements of Section 2255(h) at only a 'prima facie' level." *In re Hoffner*,

and deny Petitioner's Section 2255 Petition.[15]

Finally, the Court also rejects Magistrate Judge Cannon's recommendation that a Certificate of Appealability should issue. (Dkt. No. 110 at 17). The Supreme Court has held that:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *accord Pabon v. Mahanoy*, 654 F.3d 385, 392 (3d Cir. 2011). Given the Third Circuit's unequivocal holding in *Green*, the Court finds that jurists of reason would not find it debatable that the Court is correct in its procedural ruling that Brow's Petition is time-barred. Thus, the Court will decline to issue a Certificate of Appealability as to Brow's 2255 Petition.

### B.    Second Report and Recommendation

Petitioner also moves for the Court to resentence him under the First Step Act. (Dkt. No. 121 at 1). Upon resentencing, Petitioner requests a "reduced term of imprisonment and 4 years supervised release." *Id.* at 11.

---

870 F.3d 301, 307 (3d Cir. 2017). The Third Circuit instructs that—despite its certification under Section 2255(h)—the district court must "conduct [an] independent analys[is] of whether the gatekeeping requirements have been satisfied in any particular case." *United States v. Peppers*, 899 F.3d 211, 220 (3d Cir. 2018). Those gatekeeping requirements are whether a petition under Section 2255(h) relies on "[1] a new rule of constitutional law, [2] made retroactive to cases on collateral review by the Supreme Court, [3] that was previously unavailable." *In re Hoffner*, 870 F.3d at 308 (citing *Tyler v. Cain*, 533 U.S. 656, 662 (2001)). Based on the limitations analysis in the text above, the Court also concludes that Brow's 2255 Petition is barred as an improper second or successive petition.

[15] Although Brow's Section 2255 Petition is untimely, the Court will nonetheless address below whether his prior convictions constitute crimes of violence under the updated Sentencing Guidelines in response to Brow's First Step Act Motion.

In 2010, Congress enacted the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372, which reduced the sentencing disparity between crack cocaine and powder cocaine offenses by increasing the drug quantity required to trigger mandatory minimum sentences for crack cocaine offenses. *See Dorsey v. U.S.*, 567 U.S. 260, 263-64, 269 (2012). However, the Fair Sentencing Act was not retroactive in nature and applied only to defendants who were sentenced after August 3, 2010. *Id.* at 273.

In 2018, the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, made the provisions of the Fair Sentencing Act applicable to those defendants convicted of "covered offenses" and sentenced prior to August 3, 2010. *See United States v. Jackson*, 964 F.3d 197, 200 (3d Cir. 2020). Section 404 of the First Step Act states:

> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

Thus, under the language of the First Step Act, if a criminal defendant is eligible for resentencing, the Court has the discretion—but is not required—to impose a reduced sentence. *United States v.*

*Easter*, 975 F.3d 318, 327 (3d Cir. 2020) ("[W]hile a district court 'may' impose a reduced sentence, it is not required to do so.").

### 1. Eligibility to Seek Relief

Before considering whether Petitioner should be resentenced, the Court must determine whether Brow is eligible to seek relief under the First Step Act. First, Section 404(c) of the First Step Act, prohibits motions under the First Step Act if a defendant was previously sentenced or resentenced under sections 2 and 3 of the Fair Sentencing Act of 2010, or if the defendant has previously moved for resentencing under the First Step Act and that request was denied. This is Petitioner's first motion under the First Step Act and he has not previously been sentenced or resentenced under the Fair Sentencing Act. (Dkt. No. 121 at 5).

Second, the Court must determine whether Petitioner committed a "covered offense" within the meaning of Section 404 of the First Step Act. Section 404(a) of the First Step Act defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010."

Here, Petitioner committed the violations "on or about November 2, 1989." (Dkt. No. 32 at 1-2). Therefore, Brow has satisfied the requirement that the offense be committed before August 3, 2010.

Petitioner was convicted of Counts I, II, and III of the Information (Dkt. No. 8) and was sentenced to a term of 360 months (30 years) of imprisonment and 5 years of supervised release. (Dkt. No. 36). Count I charged Brow with possession with intent to distribute a controlled substance containing cocaine and weighing at least 500 grams in violation 21 U.S.C. § 841(a)(1). (Dkt. No. 8 at 1). Count II charged Brow with possession of marijuana with intent to distribute in

violation 21 U.S.C. § 841(a)(1). *Id.* Count III charged Brow with conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846. *Id.* at 2.[16] According to the Presentence Report, Brow was found to be responsible for 492 grams of cocaine base and 67 grams of marijuana leading to a base level offense of 34. He was found to be a career offender putting him in the criminal history category of VI and increasing his offense level to 37.[17]

Brow was convicted under 21 U.S.C. § 841(a)(1). (Dkt. No. 36). The penalties for a violation of 21 U.S.C. § 841(a) are set out in 21 U.S.C. § 841(b). *See United States v. Birt*, 966 F.3d 257, 261 (3d Cir. 2020). The penalties, including statutory minimums and maximums, are based on different quantities of drugs in 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(B), and 841(b)(1)(C), with § 841(b)(1)(A) providing for the harshest penalties for the greatest quantities of drugs. Prior to the Fair Sentencing Act, 21 U.S.C. § 841(b)(1)(A)(iii) set a mandatory minimum sentence of 10 years of imprisonment and maximum sentence of life in prison for violations of § 841(a) involving *50 grams or more* of a mixture which contains crack cocaine.[18] The Fair

---

[16] The Information originally charged Brow with five counts but Counts IV and V were severed. Trial Tr., 24:5-25:24, June 26, 1990.

[17] The Court notes that Count I of the Information charged Brow with possession of a controlled substance containing "cocaine" with intent to distribute (Dkt. No. 8 at 1), and the jury convicted him of "possession with intent to distribute a narcotic controlled substance, to wit: cocaine," (Dkt. No. 32 at 1). However, according to the Presentence Report, Brow was sentenced pursuant to 21 U.S.C. § 841(b)(1)(A) based on the amount of *cocaine base* (crack cocaine) he possessed. At trial, District Judge Stanley S. Brotman noted the discrepancy between the charges for cocaine and the Government's evidence of crack cocaine. However, Judge Brotman and the parties decided that the discrepancy would not matter given the relationship between crack cocaine and cocaine. Trial Tr., 125:9-126:25, June 27, 1990.

[18] Brow was convicted of only a violation of 21 U.S.C. § 841(a)(1) for Counts I and II with no reference to a specific penalty under 21 U.S.C. § 841(b). (Dkt. No. 36 at 1). Under principles announced by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), if Brow were tried today, the facts supporting the imposition of a specific penalty under 21 U.S.C. § 841(b) would have been submitted to the jury to be proved beyond a reasonable doubt. As stated by the Third Circuit:

Sentencing Act modified § 841(b)(1)(A)(iii) by changing 50 grams to 280 grams. Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372; *see also Easter*, 975 F.3d at 321 ("Under the Fair Sentencing Act, the offense must involve 280 grams or more of crack cocaine to trigger the 10-years-to-life range and 28 grams or more to trigger the 5-to-40-year range.").

Magistrate Judge Cannon found that Petitioner, sentenced under 21 U.S.C. § 841(b)(1)(A), was convicted of a covered offense within the meaning of the First Step Act. (Dkt. No. 128 at 8-9). Additionally, Magistrate Judge Cannon concluded that Brow's status as a career offender does not preclude the District Court from issuing a reduced sentence. (Dkt. No. 128 at 14).

The Government previously objected to both of these findings, arguing that Petitioner's conduct included at least 492 grams of crack cocaine and this "actual conduct," not the statute under which the defendant was convicted, determines eligibility for resentencing. (Dkt. Nos. 130 at 2; 124 at 2). According to the Government, even though the Fair Sentencing Act raised the quantity of crack cocaine necessary to trigger the penalties under § 841(b)(1)(A), the drug quantity involved, 492 grams, still exceeds the new threshold of 280 grams. (Dkt. No. 124 at 2). Since the same statutory penalties would apply to Brow's offense before and after the Fair Sentencing Act

---

Section 841(a) doesn't contain any reference to penalties. Those are set forth in § 841(b), and the facts necessary to impose them must be proved to a jury beyond a reasonable doubt. Thus, depending on the subsection of 841(b) implicated by a defendant's charging document, different facts must be presented to the jury in order for the government to meet its burden of proof, as required by *Alleyne*. If, for example, the indictment or information charging the defendant specifies the amount of crack that is involved in the offense, then reference must be made to the subsections of § 841(b)(1) to determine the pertinent drug quantity thresholds and what the government must prove to come within those thresholds.

*Birt*, 966 F.3d at 262. Despite no reference to 21 U.S.C. § 841(b)(1)(A) in the Information or jury verdict form, the Court understands that Petitioner was *sentenced* in accordance with 21 U.S.C. § 841(b)(1)(A) given the reference in the PSR and ultimate sentencing range described by the judge.

given his possession of 492 grams of crack cocaine, "the court did not impose a sentence for a 'covered offense,' and the defendant is ineligible for a reduced sentence." *Id.* Additionally, the Government objected to the Magistrate Judge's finding on eligibility, because the Government argues that Brow would be subject to the same sentencing range as a career offender prior to the enactment of the Fair Sentencing Act and thus is ineligible for relief. (Dkt. Nos. 130 at 4; 124 at 21-22).

The Government has since withdrawn its objections that "(1) the defendant was not convicted of a covered offense; and (2) the defendant is ineligible for a sentence reduction because his guideline range was unchanged." (Dkt. No. 138 at 5). The Court must nonetheless analyze whether Brow is eligible to seek relief.

The Third Circuit is clear that "Section 404(a) eligibility turns on a defendant's statute of conviction rather than his actual conduct." *Jackson*, 964 F.3d at 207. In *Jackson*, both defendants were convicted of drug crimes, one case involving 33.6 grams and the other 48 grams of crack cocaine. *Id.* at 200. Both defendants were given penalties under 21 U.S.C. § 841(b)(1)(B)(iii) for "five grams or more" of crack cocaine. *Id.* The Fair Sentencing Act changed the quantity threshold under § 841(b)(1)(A)(iii) from 5 grams to 28 grams. *Id.* Despite actually involving quantities of drugs over the new 28-gram threshold, the Third Circuit nonetheless found that both defendants were eligible to seek discretionary reductions of their sentences because the penalties prescribed have been modified under the Fair Sentencing Act. *Id* at 206.

Brow's status as a career offender also does not make him ineligible to seek relief under the First Step Act. A lack of change in a defendant's Guidelines range does not make a defendant ineligible for relief under the First Step Act. *See United States v. Hardwick*, 802 F. App'x 707, 710 (3d Cir. 2020) ("Whether a defendant's Guidelines range has changed is a determinative factor in

adjudicating motions for sentence reductions pursuant to Guidelines amendments. See 18 U.S.C. § 3582(c)(2). The defendant's Guidelines range, however, is not determinative of motions for sentence reductions under the First Step Act."). Further, as a career offender, Brow's offense level *would* change if his statutory maximum sentence changed under U.S.S.G. § 4B1.1(b). *See Jackson*, 964 F.3d at 207 ("[Defendant] was sentenced as a career offender, and as a result, the stipulated drug quantity does not establish the advisory guidelines range; rather, it is the *post-Fair Sentencing Act statutory maximum* that fixes the offense level that would be ascribed to [defendant] today." (emphasis added)); *United States v. Beamus*, 943 F.3d 789, 792 (6th Cir. 2019) ("[Defendant sentenced as a career offender] is eligible for resentencing because, and only because, the Fair Sentencing Act modified the statutory range for his offense."); *United States v. Allen*, 384 F. Supp. 3d 238, 243 (D. Conn. 2019) ("If the Fair Sentencing Act had been in effect when [defendant] was sentenced . . . his statutory offense quantity of 50 grams or more would have carried a maximum sentence of 40 years rather than life . . . so his offense level under the career offender guideline would have been 34 rather than 37.").

In view of the foregoing, the Court concludes that Brow, who was sentenced in accordance with 21 U.S.C. § 841(b)(1)(A)(iii), is eligible to seek relief under the First Step Act. *See Birt*, 966 F.3d at 260 (noting the Fair Sentencing Act amended the provisions for penalties involving crack cocaine in 21 U.S.C. §§ 841(b)(1)(A)(iii) and 841(b)(1)(B)(iii)).

### 2.  Court's Exercise of Discretion

Section 404(b) of the First Step Act provides that if a defendant is eligible for resentencing, the Court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed." The Third Circuit has held that when considering "whether to exercise its discretion

under § 404(b) of the First Step Act to reduce a defendant's sentence, including the term of supervised release, the district court *must* consider all of the § 3553(a) factors to the extent they are applicable." *Easter*, 975 F.3d at 326 (emphasis added).[19] A renewed analysis of the § 3553(a) factors "must include an accurate Guidelines calculation 'at the time of resentencing.'" *United States v. Murphy*, 998 F.3d 549, 556 (3d Cir. 2021) (quoting *Easter*, 975 F.3d at 325-26); *see also id.* ("[W]e again join the Sixth Circuit's conclusion that a resentencing under § 404(b) 'includes an accurate calculation of the amended guidelines range *at the time of resentencing* and a thorough renewed consideration of the § 3553(a) factors.'" (quoting *Easter*, 975 F.3d at 325-26)). The fact that a defendant may be eligible for resentencing under the First Step Act, does not mean that the Court is obliged to reduce a defendant's sentence. *Easter*, 975 F.3d at 327.

While the Government has withdrawn its objections regarding Brow's eligibility for resentencing, the Government nonetheless argues that "the Court should exercise its discretion to deny a sentencing reduction (or, at most, to grant only a *de minimis* sentencing reduction)." (Dkt. No. 138 at 5).

### i. Calculation of Defendant's Current Guideline Sentence

First, the Court must determine Petitioner's "accurate Guidelines calculation 'at the time of resentencing.'" *Murphy*, 998 F.3d at 556.

In this case, Petitioner's sentence was determined based on his status as a career offender. (PSR at ¶¶ 23, 28). Under the Sentencing Guidelines, if a person is determined to be a career offender, their "criminal history category in every case . . . shall be Category VI," and the

---

[19] The Petitioner requests a hearing for his resentencing. (Dkt. No. 121 at 9). However, for resentencing under the First Step Act, defendants are "not entitled to a plenary resentencing hearing at which [they] would be present." *Easter*, 975 F.3d at 326. The Court can adequately consider the 18 U.S.C. § 3553(a) factors presented with the information before it.

Guidelines provide a table for the various offense levels based on the applicable Offense Statutory Maximum. U.S.S.G. § 4B1.1.

Petitioner does not argue that his designation as a career offender would change in any way upon resentencing. Indeed, he states that, pursuant to U.S.S.G. § 4B1.1(b), he would still have a criminal history category of VI. (Dkt. No. 121 at 9). However, Petitioner argues that due to a decrease of his statutory maximum sentence applicable to his crack cocaine conviction, under U.S.S.G. § 4B1.1(b) his offense level would be 34, not 37. *Id.* Petitioner argues that his previous sentence for "50 grams or more" of crack cocaine had a statutory minimum sentence of 10 years of imprisonment and maximum sentence of life under 21 U.S.C. § 841(b)(1)(A)(iii), but now would have a statutory minimum sentence of 5 years of imprisonment and statutory maximum of 40 years under 21 U.S.C. § 841(b)(1)(B)(iii). *Id.* at 2. With a criminal history category of VI and offense level of 34, this would result in a Guidelines range of 262 to 327 months—less than the 360 months imposed. *Id.* at 9.

The Court must therefore determine whether Petitioner is still considered a career offender under the updated Sentencing Guidelines. *See Murphy*, 998 F.3d at 556 (stating that "[a]n accurate calculation of the Guidelines calculation 'at the time of resentencing'" includes consideration of whether a defendant "qualified as a career offender at that time").

Under the 2021 Guidelines Manual, a defendant is a career offender if "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a

18

controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).[20]

It is undisputed that at the time of the instant offense, Brow was at least eighteen years old, and the instant offense is a controlled substance offense. As to the third requirement regarding Petitioner's career offender status, the Presentence Report ("PSR") reflects that Brow was previously convicted of two counts of third-degree assault, third-degree robbery, and possession of a dangerous weapon during the commission of a crime of violence. (PSR at ¶¶ 19-21).

Section 4B1.2(a) of the current Sentencing Guidelines defines a crime of violence as: "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)." The first definition of crime of violence is known as the "elements clause," and the second is known as the "enumerated offenses clause." *United States v. Ramos*, 892 F.3d 599, 605 (3d Cir. 2018).

In determining whether a crime constitutes a crime of violence under the elements clause of § 4B1.2, the Third Circuit has stated that courts should use the "categorical approach":

> When conducting that analysis under the elements clause, as here, we ask whether the use, attempted use, or threatened use of physical force against another person is

---

[20] The Guidelines define "two prior felony convictions" as "(1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §[]4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*." U.S.S.G. § 4B1.2(c).

> categorically an element of the offense of conviction. If the statute forming the basis of the defendant's conviction necessarily has such an element, then the statute pr[e]scribes a predicate crime of violence within the meaning of the Guidelines. But if the statute of conviction lacks such an element, it "sweeps more broadly" than the Guidelines' definition, and a prior conviction under the statute cannot serve as a career offender predicate—even if the defendant actually committed the offense by using, attempting to use, or threatening to use physical force against another person.

*Ramos*, 892 F.3d at 606. However, if a statute of conviction is "divisible" meaning "it 'comprises multiple, alternative versions of the crime,'" *Id.* at 607 n.29 (quoting *Descamps v. United States*, 570 U.S. 254, 257, 262 (2013)), courts apply the "modified categorical approach," *Id.* at 606-07. Using this approach:

> [T]he court may consult a specific set of extra-statutory documents to identify the specific statutory offense that provided the basis for the prior conviction. These materials include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." This approach permits the court to assess whether that offense categorically qualifies as a crime of violence. While the modified categorical approach allows courts to look beyond the text of a divisible statute for that limited purpose, it does not permit courts to scour the record to ascertain the factual conduct giving rise to the prior conviction.

*Id.* at 607. The modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Descamps*, 570 U.S. at 263.

The PSR reflects that Petitioner was convicted of assault in the third degree on two separate occasions, once in 1983 and once in 1985. (PSR at ¶¶ 19, 21). Under Virgin Islands law, assault in the third degree is found in 14 V.I.C. § 297.

At the time of Brow's prior convictions, 14 V.I.C. § 297 read:

> Whoever, under circumstances not amounting to an assault in the first or second degree—
> (1) assaults another person with intent to commit a felony;
> (2) assaults another with a deadly weapon;
> (3) assaults another with premeditated design and by use of means calculated to inflict great bodily harm;
> (4) assaults another and inflicts serious bodily injury upon the person assaulted; or whoever under any circumstances;

20

        (5) assaults a peace officer in the lawful discharge of the duties of his office
with a weapon of any kind, if it was known or declared to the defendant that
the person assaulted was a peace officer discharging an official duty;—
shall be fined not more than $500 or imprisoned not more than 5 years or both.

14 V.I.C. § 297 (1971).[21] The statute provides for alternative elements for assault in the third

degree, "not merely alternative factual means by which an offender can commit the single,

overarching crime"[22]—and thus as noted by Petitioner (Dkt. No. 99 at 17)—the statute is divisible.

---

[21] The current version of the statute has not changed significantly, but has undergone a slight
renumbering. It now reads:

> (a) Whoever, under circumstances not amounting to an assault in the first or second
> degree—
>> (1) assaults another person with intent to commit a felony;
>> (2) assaults another with a deadly weapon;
>> (3) assaults another with premeditated design and by use of means
>> calculated to inflict great bodily harm;
>> (4) assaults another and inflicts serious bodily injury upon the person
>> assaulted; or whoever under any circumstances;
>> (5) [Deleted.]
> shall be fined not less than $500 and not more than $3,000 or imprisoned not more
> than 5 years or both.
>
> (b) Whoever, under circumstances not amounting to an assault in the first or second
> degree assaults a peace officer in the lawful discharge of the duties of his office
> with a weapon of any kind, if it was known or declared to the defendant that the
> person assaulted was a peace officer discharging an official duty, shall be fined not
> less than $2,000 and not more than $10,000, or imprisoned not more than 10 years,
> or both.

14 V.I.C. § 297 (2022).

[22] As stated by the Third Circuit:

> A determination of a statute's divisibility turns on the distinction between "means"
> and "elements." Elements are the constituent parts of a criminal offense that a jury
> must find beyond a reasonable doubt to convict; or, alternatively, that a defendant
> necessarily admits when pleading guilty. Means, on the other hand, are merely the
> factual ways that a criminal offense can be committed; they are "extraneous to the
> crime's legal requirements" and thus "need neither be found by a jury nor admitted
> by a defendant." A divisible statute sets out one or more *elements* in the alternative,
> most often using disjunctive language to list multiple, alternative criminal offenses.

*See Ramos*, 892 F.3d at 609 (concluding that Pennsylvania's aggravated assault statute, 18 Pa. C.S. § 2702 is a divisible statute); *see also Davis v. People of the Virgin Islands*, 69 V.I. 619, 658-59 (2018) (Swan, J., dissenting in part and concurring in part) (defining the elements of assault in the third degree). Because 14 V.I.C. § 297 is a divisible statute, the Court must apply the modified categorical approach and look to certain documents to "establish the offense of conviction with 'certainty.'" *Ramos*, 892 F.3d at 610; *see also Mathis v. United States*, 579 U.S. 500, 505-06 (2016) ("Under [the modified categorical] approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.").

The March 12, 1985 Judgment in Crim. No. 180/1984 in the Territorial Court of the Virgin Islands was for "Count Two – Assault Third Degree." Count Two of the Information charges that Brow did "assault one Rafael James and inflict serious bodily injury upon the person of Rafael James, namely by stabbing Rafael James in the chest area, all in violation of 14VIC297(4)."

To constitute a crime of violence under the elements clause of U.S.S.G. § 4B1.2, the crime must have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). "The phrase 'physical force,' according to the Supreme Court, 'refers to force exerted by and through concrete bodies' that is 'capable of causing physical pain or injury to another person.' . . . That remains true regardless of whether an offender could be convicted under the statute for applying force directly (*e.g.*, hitting a victim with a bat)

---

Each alternative offense listed in a divisible statute must be proven beyond a reasonable doubt to sustain a conviction. An indivisible statute, by comparison, sets forth a single set of elements that define a single crime, regardless of whether the statute lists separate factual *means* of satisfying a particular element. The modified categorical approach applies only to divisible statutes.

*Ramos,* 892 F.3d at 608-09 (footnotes omitted).

or applying force indirectly (*e.g.*, throwing a brick at a victim)." *Ramos*, 892 F.3d at 610-11 (citing *Johnson v. United States*, 559 U.S. 133, 138-40 (2010)).[23] Under the guidance of *Johnson¸* "'mere[] touching,' the common law definition of a battery, does not satisfy the level of force required for a crime of violence." *United States v. Perez-Silvan*, 861 F.3d 935, 942 (9th Cir. 2017) (citing *Johnson*, 559 U.S. at 139-43); *see also United States v. Quinnones*, 16 F.4th 414, 417 (3d Cir. 2021) ("Together, the 'use of physical force' in § 4B1.2(a)(1) involves the 'intentional employment of something capable of causing physical pain or injury to another person, regardless of whether the perpetrator struck the victim's body.' Under this definition, the qualifying physical force may be direct or indirect so long as it is 'strong enough to constitute power,' and more than the 'slightest offensive touching,'" (quoting *United States v. Chapman*, 866 F.3d 129, 132, 139, 140, 142 (3d Cir. 2017)) (internal citations omitted)).

A panel of the Third Circuit has concluded that 14 V.I.C. § 297(a)(4)—previously 14 V.I.C. § 297(4)—which defines assault in the third degree as when one "assaults another and inflicts serious bodily injury upon the person assaulted" is a crime of violence. *See United States v. Saldana*, 719 F. App'x 120 (3d Cir. 2017). The Third Circuit reasoned that "[b]ecause this offense, by definition, requires that 'serious bodily injury' result, it inevitably follows that this offense is one which requires force capable of causing physical pain or injury . . . [thus,] the District Court

---

[23] Although *Johnson* addressed the requirements for a violent felony under the ACCA, courts apply the same case law and rationale to determine whether a crime constitutes a crime of violence under the Sentencing Guidelines. *See United States v. Brown*, 765 F.3d 185, 189 n.2 (3d Cir. 2014) ("Precedent . . . requires the application of case law interpreting 'violent felony' in [the] ACCA to 'crime of violence' in U.S.S.G. § 4B1.2[ ] because of the substantial similarity of the two sections." (quoting *United States v. Marrero*, 743 F.3d 389, 394 n.2 (3d Cir. 2014)) (internal quotation marks omitted) (alterations in original)); *United States v. Hopkins*, 577 F.3d 507, 511 (3d Cir. 2009) ("[T]he definition of a violent felony under the ACCA is sufficiently similar to the definition of a crime of violence under the Sentencing Guidelines that authority interpreting one is generally applied to the other . . . .").

correctly concluded that assault in the third degree under Virgin Islands law is a crime of violence." *Id.* at 127 (citing *Roberts v. Holder*, 745 F.3d 928, 930-31 (8th Cir. 2014)); *see also Ramos*, 892 F.3d at 612 ("[A] conviction under a statute proscribing 'the knowing or intentional causation of bodily injury' is a conviction that 'necessarily involves the use of physical force.'" (quoting *United States v. Castleman*, 572 U.S. 157, 169 (2014))). Accordingly, the Court concludes that, because Petitioner was convicted of an offense under 14 V.I.C. § 297(4) which required that serious bodily injury result from the assault, Petitioner committed a crime of violence under the elements clause of U.S.S.G. § 4B1.2.

The May 23, 1983 Judgment in Crim. No. 418/82 in the Territorial Court of the Virgin Islands involves a conviction for "Assault in the Third Degree, in violation of Title 14 V.I.C. § 297(2)." As noted above, 14 V.I.C. § 297(2)—presently renumbered as 14 V.I.C. § 297(a)(2)—provides for a third-degree assault conviction when one "assaults another with a deadly weapon."

Assault is defined by 14 V.I.C. § 291, which states:

> Whoever—
> (1) attempts to commit a battery; or
> (2) makes a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery—commits an assault.

The Virgin Islands Code additionally defines "Assault and Battery" as "[w]hoever uses any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used." 14 V.I.C. § 292.

Petitioner argues that third degree assault is not by its elements a crime of violence because "*de minimus* contact or even a mere threatening gesture could plausibly support a conviction under the third degree assault statute." (Dkt. No. 99 at 19).

24

For purposes of 14 V.I.C. § 297(2)—when one *assaults* another with a deadly weapon—
the Virgin Islands Supreme Court has cited to both 14 V.I.C. § 291 and 14 V.I.C. § 292 for the
definition of assault. *Compare Wallace v. People of the Virgin Islands*, 71 V.I. 703, 711-12 (2019)
("An assault is 'any unlawful violence upon the person of another with an intent to injure him,
whatever be the means or degree of violence used.'" (quoting 14 V.I.C. § 292))); *Cascen v. People
of the Virgin Islands*, 60 V.I. 392, 407 (2014); *Phipps v. People of the Virgin Islands*, 54 V.I. 543,
550 (2011), *with Heyliger v. People of the Virgin Islands*, 66 V.I. 340, 353 (2017) ("Assault, as
used in 14 V.I.C § 297(a), means 'attempt[ing] to commit a battery; or mak[ing] a threatening
gesture showing in itself an immediate intention coupled with an ability to commit a battery . . . .'"
(quoting 14 V.I.C. § 291)); *Ambrose v. People of the Virgin Islands*, 56 V.I. 99, 103-04 (2012)
("[T]he Virgin Islands Code defines assault in the third degree as any circumstance—other than a
first or second degree assault—in which an individual 'assaults another with a deadly weapon,' 14
V.I.C. § 297(2), with 'assault' defined as 'attempt[ing] to commit a battery; or … mak[ing] a
threatening gesture showing in itself an immediate intention coupled with an ability to commit a
battery.' 14 V.I.C. § 291(1)-(2)." (alterations in original)).

Given that the Virgin Islands Supreme Court has defined assault in reference both to 14
V.I.C. § 291 and 14 V.I.C. § 292, assault seemingly can be, and has been, defined as the attempt
to commit a battery, the threat to commit a battery, or the actual battery. *See People v. Bos.*, No.
CR F298/2007, 2009 WL 10742372, at *5 (V.I. Super. Ct. June 10, 2009) ("Thus, an assault may
be conducted in one of three ways: (1) a threat to use unlawful violence on another; (2) an attempt
to commit a battery; or (3) the actual use of unlawful violence on another." (citing 14 V.I.C §§
291, 292 and *Government v. Knowles*, 20 V.I. 94 (V.I. Terr. Ct. 1983)). For an assault to become
both an assault and battery, a defendant must use "unlawful violence upon the person of another

with intent to injure him, whatever be the means or the degree of violence used." 14 V.I.C. § 292; *see also Phillip v. People of the Virgin Islands*, 58 V.I. 569, 592 (2013) ("A battery is defined as the use of 'unlawful violence upon the person of another with the intent to injure him.'" (quoting14 V.I.C. § 292)); *Gov't of Virgin Islands v. Hamilton*, 334 F. Supp. 1382, 1384 (D.V.I. 1971) ("[I]n order that an assault may also become a battery, there must be a 'touching' or some physical force and contact within the concept of the common law definition of battery."). "'Unlawful violence' encompasses a wide variety of conduct." *Simmonds v. Virgin Islands*, Criminal Action No. 2008-0029, 2020 WL 1676927, at *4 (D.V.I. App. Div. Apr. 3, 2020), *aff'd in part, appeal dismissed in part*, 837 F. App'x 109 (3d Cir. 2020), *cert. denied*, 142 S. Ct. 268 (2021). However, "[b]attery requires 'a "touching" or some physical force and contact within the concept of the common law definition of battery.'" *People of the Virgin Islands v. Simmonds*, 58 V.I. 3, 13 (V.I. Super. Ct. 2012) (*Hamilton*, 334 F. Supp. at 1384).[24]

Regardless of whether battery in the Virgin Islands could be accomplished with "mere touching" of the type rejected in *Johnson*, the type of assault Petitioner was convicted of involves the commission of a battery or an attempt or threat of a battery, 14 V.I.C. §§ 291 and 292, with the *use of a deadly weapon*. *See Wallace*, 71 V.I. at 711 ("To obtain a conviction for third-degree assault under 14 V.I.C. § 297 (a)(2), the People must prove that the defendant committed an assault, and that the assault was committed 'with a deadly weapon.'" (quoting *Cascen*, 60 V.I. at 407)); *id.* at 711-712 (affirming jury instruction for 14 V.I.C. § 297(a)(2) that "the Defendant used a deadly weapon to commit the act").

---

[24] The degree of touching necessary to commit an assault or battery in the Virgin Islands has been analyzed to be something more than spitting. *See People of the Virgin Islands v. Lima*, 57 V.I. 118, 128-130 (V.I. Super. Ct. 2012) (concluding mere spitting does not constitute an assault under 14 V.I.C. § 291 or an assault and battery under 14 V.I.C. § 292).

Several courts of appeal have held that similar statutes criminalizing assault or battery constitute crimes of violence when they involve the use of a deadly weapon. *See Ramos*, 892 F.3d at 611-12 (finding second degree aggravated assault under Pennsylvania law which requires "attempt[ing] to cause or intentionally or knowingly caus[ing] bodily injury to another with a deadly weapon" is a crime of violence); *Perez-Silvan*, 861 F.3d at 943 ("[W]e cannot imagine one using or displaying a deadly weapon in the course of an offensive touching without threatening the use of violent force. We have repeatedly held that '[a]ssault with a deadly weapon . . . *necessarily* entails the threatened use of force against the person of another.'" (quoting *Camacho-Cruz v. Holder*, 621 F.3d 941, 943 (9th Cir. 2010))); *United States v. Benton*, 876 F.3d 1260, 1262-64 (10th Cir. 2017) (finding the crime of aggravated assault with a deadly weapon with the elements of "(1) intentionally (2) placing another person in reasonable apprehension of immediate bodily harm (3) with a deadly weapon" constituted a crime of violence); *Braden v. United States*, 817 F.3d 926, 933 (6th Cir. 2016) (concluding that defendant was convicted of a crime of violence where he intentionally or knowingly committed an assault while using or displaying a weapon); *United States v. Rosado*, 785 F. App'x 81, 84 (3d Cir. 2019) (finding Florida aggravated battery statute with a deadly weapon is a crime of violence).

The Court agrees with the rationale of these courts and finds that a violation of 14 V.I.C. § 297(2) categorically includes the use, attempted use, or threat of physical force. Assault requires the use of unlawful violence or attempts or threats to commit unlawful violence. *See* 14 V.I.C. §§ 291 and 292. Assault also requires that a defendant have an intent to commit bodily injury. *See Joseph v. People of the Virgin Islands*, 60 V.I. 338, 349 (2013) ("'[I]ntent to injure,' like 'unlawful violence,' is an element of third-degree assault . . . ."); *Wallace*, 71 V.I. at 711 (affirming jury instruction for 14 V.I.C. § 297(a)(2) that defendant committed unlawful violence "with the intent

27

to cause injury."); *Hamilton*, 334 F. Supp. at 1384 (In all of these sections [in Chapter 13 of Title 14], the use of the term 'violence' encompasses some force upon the person of another with intent to injure.).[25]

Under 14 V.I.C. § 297(a)(2), the unlawful violence or attempt/threat to commit unlawful violence must also be "committed with a deadly weapon." *Wallace*, 71 V.I. at 711 (internal quotation marks and citation omitted); *see also Ponce v. People*, 72 V.I. 828, 884 (2020) (Swan, J., concurring in part and dissenting in part) (stating that an element of 14 V.I.C. § 297(a)(2) is that the actions "were taken with the use of a deadly weapon"). The Virgin Islands Supreme Court defines "deadly weapon" under this statute as a weapon "from the manner used, is calculated or likely to produce death or serious bodily injury." *Jackson-Flavius v. People of the Virgin Islands*, 57 V.I. 716, 724 (2012). Such a determination "depends upon two factors: (1) what it intrinsically is, and (2) how it is used. If almost anyone can kill with it, it is a deadly weapon when used in a manner calculated to kill." *Id.*; *see also Phipps v. Gov't of Virgin Islands*, 241 F. Supp. 2d 507, 510 (D.V.I. App. Div. 2003). As stated by the Third Circuit, "it is nearly impossible to conceive of a scenario in which a person could . . . attempt to injure . . . another person with a deadly weapon without engaging in at least some affirmative, forceful conduct." *Ramos*, 892 F.3d at 612. This conclusion is not changed by the fact that third-degree assault may constitute only a "threat" to commit a battery using a deadly weapon. *See Perez-Silvan*, 861 F.3d at 943-44 ("[A]n offensive touching that is accomplished while using or displaying a deadly weapon . . . involves violent

---

[25] "The Supreme Court has held that if an offense can be committed with recklessness or negligence, it is not a crime of violence." *Quinnones*, 16 F.4th at 420 (citing *Borden v. United States*, 141 S. Ct. 1817, 1825 (2021) and *Leocal v. Ashcroft*, 543 U.S. 1, 9, 13 (2004)); *see also United States v. Gorny*, 655 F. App'x 920, 925 (3d Cir. 2016) ("Further, a conviction under [18 Pa. Con. Stat.] § 2702(a)(4) requires the knowing or intentional causation of (or attempt to cause) bodily injury, which satisfies the elements clause's mens rea requirement.").

physical force. There is no dispute that the other means of committing a simple assault . . . (1) 'caus[ing] bodily injury to another' or (2) 'caus[ing] another to reasonably fear imminent bodily injury'—entail the use or threatened use of physical force when they . . . involve the 'use[] or display[] of a deadly weapon.'"); *Benton*, 876 F.3d at 1263-64 ("Since a deadly weapon is 'an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury,' if a victim had a reasonable apprehension that the perpetrator threatened to harm him with such an object, then the perpetrator committed aggravated assault with a deadly weapon. Because a threat of 'death or serious bodily injury,' is at least 'force capable of causing physical pain or injury to another person,' the force required to convict under [Kan. Stat. Ann.] § 21-3410(a) is violent physical force." (internal citations omitted)); *United States v. Dobbin*, 629 F. App'x 448, 452 (3d Cir. 2015) ("And because [defendant] was convicted of violating 18 Pa. C.S. § 3701(a)(1)(ii), which requires that the offender 'threaten[] another with or intentionally put[] him in fear of immediate serious bodily injury,' his convictions satisfy the [the elements clause of U.S.S.G. § 4B1.2(a)]."). Thus, Petitioner still qualifies as a career criminal pursuant to U.S.S.G. § 4B1.1(a) as he has committed a second felony that is a crime of violence under the updated Sentencing Guidelines.

Additionally, the PSR notes that Brow has a third conviction for robbery in the third degree. (PSR at ¶ 20). The Court finds that this conviction is also one for a crime of violence under the elements clause.

Under Virgin Islands law, robbery is generally defined by 14 V.I.C. § 1861: "Robbery is the unlawful taking of personal property in the possession of another, from his person or immediate

presence and against his will, by means of force or fear."[26] Third-Degree Robbery is then defined in 14 V.I.C. § 1864 which states that: "Whoever commits robbery under circumstances not amounting to robbery in the first degree or robbery in the second degree is guilty of robbery in the third degree and shall be imprisoned not more than 10 years."[27] Thus, it is clear that Third-Degree Robbery incorporates the definition of generic robbery found in 14 V.I.C. § 1861. *See Gov't of Virgin Islands v. Soto*, 718 F.2d 72, 78 (3d Cir. 1983) ("[R]obbery was divided into the present crimes of first, second and third degree robbery in 1977 . . . .").

The Supreme Court in *Stokeling v. United States*, 139 S. Ct. 544 (2019), held that "a robbery offense that has as an element the use of force sufficient to overcome a victim's resistance necessitates the use of 'physical force' within the meaning of the [elements clause of the ACCA]." *Id.* at 548. The Court stated that common law robbery "has long required force or violence." *Id.* at 550. Indeed, "[a]t common law, an unlawful taking was merely larceny unless the crime involved violence" and "violence was committed if sufficient force [was] exerted to overcome the resistance encountered." *Id.* (internal quotations and citations omitted). "[T]he force necessary to overcome a victim's physical resistance is inherently 'violent' in the sense contemplated by *Johnson*, and

---

[26] Courts in the Virgin Islands have also required the element of specific intent for a robbery conviction. *See Virgin Islands v. Solis*, 208 F. App'x 97, 100 (3d Cir. 2006) ("Virgin Islands law defines robbery as 'the unlawful taking of personal property in the possession of another, from his person or immediate presence and against his will, by means of force or fear,' where the perpetrator acted with 'a specific intent to deprive permanently a rightful owner of his property,'" (quoting 14 V.I.C. § 1861 and *Government of Virgin Islands v. Carmona*, 422 F.2d 95, 98 (3d Cir. 1970)) (internal citations omitted)); *Gov't of Virgin Islands v. Austrie*, Criminal No. ST-02-CR-9416, 2006 WL 8462857, at *3 (V.I. Super. Ct. Dec. 13, 2006) ("To sustain its burden, the Government must have proven beyond a reasonable doubt that [the defendant] (1) unlawfully took money and personal property from his possession or immediate presence, (2) against his will, (3) by means of force or fear, and (4) with the intent to permanently deprive [the victim] of his money and personal property."); *Gov't of Virgin Islands v. James*, 929 F. Supp. 201, 205 (D.V.I. 1996) (same).

[27] The Third-Degree Robbery statute is not divisible, so the Court need not use the modified categorical approach when analyzing whether it constitutes a crime of violence.

'suggest[s] a degree of power that would not be satisfied by the merest touching.'" *Id.* at 553 (quoting *Johnson*, 559 U.S. at 139).

The Third Circuit has previously found that robbery under Virgin Islands law is meant to restate the common law definition of robbery. *See Gov't of Virgin Islands v. Carmona*, 422 F.2d 95, 98 (3d Cir. 1970) ("Because of this similarity we conclude that Section 1861 is a restatement of the common law, and at common law robbery requires a specific intent to deprive permanently a rightful owner of his property."). Indeed, the robbery statute specifically requires that the defendant take property from another "from his person or immediate presence and against his will, by means of *force or fear.*" 14 V.I.C. § 1861 (emphasis added). As noted by a panel of the Third Circuit, under the Virgin Islands' generic robbery statute, when analyzing the element of robbery that is the "taking 'from [the victim's] person or immediate presence,' . . . [t]he critical nexus in this analysis is fear of or an actual threat of violence that causes the victim to relinquish control of his property." *Gov't of the Virgin Islands v. Smith*, 363 F. App'x 177, 178 (3d Cir. 2010); *see also United States v. Edwards*, Criminal No. 2010-36, 2012 WL 1556690, at *1 (D.V.I. May 2, 2012) (reversing conviction for third degree robbery because defendant only threatened that the victim "might be arrested at some point if he failed to pay as promised"), *aff'd in part, rev'd in part sub nom. United States v. John-Baptiste*, 747 F.3d 186 (3d Cir. 2014).

Thus, under the direction of *Stokeling*, Third-Degree Robbery under Virgin Islands law, which reflects the common law definition of robbery and necessitates the use of sufficient force to overcome the victim's resistance, constitutes a crime of violence under the elements clause of U.S.S.G. § 4B1.2. *See Stokeling*, 139 S. Ct. at 555 ("Because the term 'physical force' in ACCA encompasses the degree of force necessary to commit common-law robbery, and because Florida

robbery requires that same degree of 'force,' Florida robbery qualifies as an ACCA-predicate offense under the elements clause.").

Because the Court finds that Petitioner is still a career offender under the current version of the Sentencing Guidelines, the issue before the Court becomes how to determine what offense statutory maximum applies, and therefore, what impact it would have on Petitioner's Guidelines range. In *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held, based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Birt*, 966 F.3d at 262 (quoting *Alleyne*, 570 U.S. at 103) (internal quotation marks omitted). This principle requires that the facts necessary to impose a penalty under 21 U.S.C. § 841(b) be submitted to a jury. *Id.* The Court notes, however, that there is no record evidence of a jury finding as to the quantity of drugs involved in this case. (*See* Dkt. No. 32).

The absence of a jury finding as to the amount of drugs is of no consequence because Petitioner was convicted prior to *Alleyne* or *Apprendi* and the principles announced in those cases are not applied retroactively. *See United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014); *United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014); *United States v. Swinton*, 333 F.3d 481, 491 (3d Cir. 2003). Indeed, the Third Circuit has specifically held that *Alleyne* is not applicable in the First Step Act context. In *United States v. Murphy*, 998 F.3d 549 (3d Cir. 2021), the Third Circuit stated: "We thus . . . hold[] that a district court is 'bound by a previous finding of drug quantity that could have been used to determine the movant's statutory penalty at the time of sentencing.'" *Id.* at 555 (citing *United States v. Jones*, 962 F.3d 1290, 1303 (11th Cir. 2020)). Therefore, the Court is bound by the drug finding in the Presentence Report ("PSR") that was originally used to determine Petitioner's sentence. The drug finding in the PSR included a

conviction for 492 grams of cocaine base and the penalty for that drug amount is still found in the current 21 U.S.C. § 841(b)(1)(A), prescribing a maximum statutory penalty of life imprisonment. According to U.S.S.G. § 4B1.1(b), with an offense statutory maximum of life, the offense level is 37. With a criminal history category of VI as a career offender, Petitioner's guideline range remains unchanged at 360 months to life.

### ii.   Application of the § 3553(a) Factors

Considering the new range provided by the now-advisory Guidelines, the Court must now determine what the appropriate new sentence will be.

When resentencing under the First Step Act, a defendant "is not entitled to a plenary resentencing hearing at which he would be present." *Easter*, 975 F.3d at 326. However, a district court must "consider all of the § 3553(a) factors to the extent that they are applicable." *Id.* at 323; *accord Murphy*, 998 F.3d at 556. Title 18 U.S.C. § 3553(a) provides that a court, in imposing a sentence, should consider the following factors: "(1) the nature and circumstances of the offense and the defendant's history; (2) the need to reflect the seriousness of the crime and to adequately deter criminal conduct; (3) the available sentences; (4) the established sentencing range; (5) any pertinent sentencing policies; (6) the need to avoid sentencing disparities; and (7) the need to provide restitution to victims." *United States v. Heilman*, 377 F. App'x 157, 213 n.45 (3d Cir. 2010) (citing 18 U.S.C. § 3553(a)(1)-(7)).

Petitioner argues that a sentence reduction is warranted because:

> At the time of his original sentencing, Mr. Brow was actively involved in an expansive drug conspiracy dealing large quantities of crack cocaine. While this conduct rightly merited punishment, the appropriate punishment must be considered in relation to the newly applicable statutory and Guidelines sentencing ranges and the fact that sentences for crack offenses were overly punitive at the time Mr. Brow was originally sentenced. Additionally, Mr. Brow's crime did not involve any violence or firearms.

(Dkt. No. 121 at 9-10). In November 1989, Brow and his codefendant were observed at the Cyril E. King airport on St. Thomas preparing to travel to St. Croix and were discovered carrying approximately 500 grams of crack cocaine and 70 grams of marijuana. Such conduct is a serious federal offense. The drug trade poses a serious threat to the public as evidenced by both the prevalence of illegal drugs in the Virgin Islands and nationally and the violence that often accompanies drug trafficking and distribution. Moreover, Brow's offense included a very large amount of crack cocaine. Despite the long period of time between Petitioner's offense and the present, drug trafficking and the violence often associated with trafficking continue to pose a threat to the safety and security of the Virgin Islands community. The Court must impose sentences that would act to deter others from participating in similar conduct.

Regarding the need to deter further criminal conduct by Petitioner, Petitioner argues that because of his age, the risk for recidivism has greatly decreased and "[h]is decreased risk of recidivism minimizes the need for continued incarceration." (Dkt. No. 121 at 11). As noted by the Magistrate Judge, the risk of recidivism has been lessened by Petitioner's already lengthy prison term and his age. *See United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) ("[S]tudies demonstrate that the risk of recidivism is inversely related to an inmate's age."). Petitioner has submitted a letter to the Court stating his goals for the future and efforts at rehabilitation while in prison including studying business and mentoring other inmates. (Dkt. No. 133). However, the Court notes that Brow had a history of criminal activity prior to his current incarceration which justifies his career offender status. This criminal activity includes two convictions for third degree assault and one conviction for third degree robbery—serious crimes that involved violence.

The Court further notes that the original sentencing Judge already sentenced Petitioner to the lowest end of the applicable Guidelines range—a range that has not changed under the new

Sentencing Guidelines. (Dkt. No. 124-1 at 15-16). Anything below the sentence of 360 months would mean a variance or departure from the applicable Guidelines range. While acknowledging that Petitioner is older and has already served a lengthy term of imprisonment, the record does not suggest that the Court should impose a sentence *lower* than the applicable Guidelines range.

Considering the available sentences, an updated calculation of Petitioner's Guideline range identified above, and the 18 U.S.C. § 3553(a) factors, the Court finds that a reduction in Petitioner's term of imprisonment or supervised release is not warranted.

### III.    CONCLUSION

For the reasons discussed above, the Court will reject the First R&R (Dkt. No. 110) and deny Petitioner's "Motion for a Reduction of Sentence or Immediate Release Purs[u]ant to 28 USC 2255" (Dkt. No. 85) and "Supplement to Motion to Vacate and Correct Sentence Under 28 U.S.C. § 2255" (Dkt. No. 99). The Court will decline to issue a Certificate of Appealability with regard to Brow's 2255 Petition. The Court will also reject the Second R&R (Dkt. No. 128). While the Court acknowledges that Petitioner is eligible for resentencing, the Court will deny Petitioner's "Motion for Sentence Reduction under the First Step Act" (Dkt. No. 121) to the extent it requests that the Court impose a reduced sentence.

An appropriate Order accompanies this Memorandum Opinion.

Date:   June 16, 2022                           _____/s/_____
                                                WILMA A. LEWIS
                                                District Judge